**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| National Trust for Historic Preservation, et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>Raymond Suazo, et al.,<br><br>  Defendants. | No. CV-13-01973-PHX-DGC<br><br>**ORDER** |

On March 27, 2015, the Court granted Plaintiffs' motion for summary judgment, finding that the Bureau of Land Management's decision to open the entire Sonoran Desert National Monument to recreational shooting was unreasonable in light of the Bureau's duty to protect the Monument's. Plaintiffs have now filed a motion for injunctive relief, asking the Court to enjoin shooting throughout the Monument. Doc. 48. The Court will grant the motion in part.

**I.    Background.**

This case involves the Bureau of Land Management's ("BLM") decision to allow recreational target shooting throughout the Sonoran Desert National Monument. On January 17, 2001, President Clinton signed a presidential proclamation ("Proclamation") establishing the Sonoran Desert National Monument ("Monument"), which comprises almost 500,000 acres of Southern Arizona. The President directed the "Secretary of the Interior [to] manage the Monument through the Bureau of Land Management, pursuant to applicable legal authorities, to implement the purposes of this proclamation . . . [and to]

prepare a management plan that addresses the actions . . . necessary to protect the objects identified in this proclamation." A.R. 872.

BLM proceeded to prepare an environmental impact statement ("EIS") and a resource management plan ("RMP") for the Monument. An issue that quickly emerged was how to address the recreational target shooting that was taking place throughout the Monument. After researching the issue, BLM concluded that the entire Monument should be closed to recreational shooting. In its Draft EIS, BLM explained "that shooting activity, for reasons of potential impacts to Monument objects, visitor safety, accessibility, and physical suitability of terrain, would likely be limited to one area, the Hidden Valley . . . location." A.R. 15316. Because making only this area available for shooting would be impractical, and because "BLM does not compromise on the safety of its visitors," BLM concluded that recreational shooting should be prohibited throughout the Monument. *Id.*

BLM planned to implement this conclusion in its proposed RMP and Final EIS. Immediately before publication of these documents, however, the Department of the Interior directed BLM to allow shooting throughout the Monument. BLM then adjusted the RMP and EIS to allow shooting and outlined "a comprehensive suite of administrative actions and best management practices" to mitigate the environmentally-harmful effects of recreational shooting. Nevertheless, the RMP and EIS retained BLM's original analysis of shooting and BLM's recommendation that shooting be prohibited. In September of 2012, BLM published its final Record of Decision ("ROD") and approved RMP, which allowed shooting throughout the Monument.

Plaintiffs are three non-profit organizations: National Trust for Historic Preservation, Wilderness Society, and Archeology Southwest. On September 27, 2013, they filed suit against the Department of the Interior, BLM, and Raymond Suazo, the Arizona state director of BLM. Plaintiffs claimed that Defendants had violated the Proclamation, the Federal Land Policy and Management Act ("FLPMA"), the Administrative Procedure Act ("APA"), the National Environmental Policy Act

("NEPA"), and the National Historic Preservation Act. Doc. 1. The parties filed cross-motions for summary judgment and the Court heard oral arguments.

On March 27, 2015, the Court ruled largely in favor of Plaintiffs. For Plaintiffs' claim that Defendants' decision to allow recreational shooting throughout the Monument violated the Proclamation and FLPMA, the Court found:

> After fully considering the Final EIS and the ROD, the Court cannot conclude that BLM acted reasonably in opening the Monument to shooting. There is simply too great an incongruity between the information contained in the Final EIS and the decision to allow shooting throughout the Monument. The Final EIS finds ongoing and substantial damage to the Monument from shooting, while the decision allows shooting to continue freely. . . . This is a quintessential example of a decision that runs "counter to the evidence in the record." And the incongruity is not lessened by the addition of administrative actions that have not been evaluated for effectiveness.

Doc. 43 at 12 (citations omitted). The Court also found that the Final EIS violated NEPA by containing an inadequate analysis of mitigation measures for recreational shooting and an inadequate analysis of the cumulative impacts of shooting and other activities. Finally, the Court granted Defendants summary judgment on Plaintiff's stand-alone APA claim.

As for remedy, Plaintiffs had initially requested a declaratory judgment, a remand of the matter to BLM, and an injunction on recreational shooting in the Monument pending a new decision and analysis from BLM. At oral argument, counsel for Plaintiffs stated they no longer were seeking an injunction. Based on this change of position, the Court did not grant an injunction but simply vacated "portions of the ROD, RMP, and Final EIS that permit recreational target shooting throughout the Monument and remand[ed] to BLM for reconsideration of that decision in light of the shortcomings identified in this order." Doc. 43 at 22-23. BLM interpreted this Order as a directive to further evaluate the identified shortcomings, while still allowing shooting throughout the Monument until a new RMP was published. Doc. 48-4.

Plaintiffs have now filed a motion for an injunction on recreational shooting within the Monument. Doc. 48. They argue that the effect of vacating the portions of the

1 RMP addressing recreational shooting was to prohibit shooting.  They also argue that, 2 regardless of the effect of the vacatur, the Court should enjoin shooting pending a new 3 decision and analysis from BLM.

**II.     Procedural Posture.**

Plaintiffs claim that their motion is appropriate under either Rule 59(e), which allows a court to "alter or amend a judgment," or Rule 60(b), which allows a court to relieve a party from a final judgment.  Neither of these rules clearly applies to Plaintiffs' motion because the Court has not yet entered a final judgment in this case.  Rather, Plaintiffs' motion fits better under Rule 54(b), which allows a court to revise "any order or other decision . . . at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  Plaintiffs in effect ask the Court to modify its summary judgment order to include injunctive relief.  The Court has power to do so under Rule 54(b) and inherently.  *See United States v. Martin*, 226 F.3d 1042, 1049 (9th Cir. 2000) (finding that "the district court had inherent jurisdiction to modify, alter, or revoke" a non-final order).

**III.    Effect of Vacatur.**

In its earlier Order, the Court vacated those "portions of the ROD, RMP, and Final EIS that permit recreational target shooting throughout the Monument[.]"  Doc. 43 at 22.  The parties agree that the effect of this vacatur "is to reinstate the rule previously in force."  *Paulsen v. Daniels*, 413 F.3d 999, 1008 (9th Cir. 2005); *see also CropLife Am. v. EPA*, 329 F.3d 876, 884-85 (D.C. Cir. 2003) (finding after vacatur that "[t]he consequence is that the agency's previous practice . . . is reinstated and remains in effect unless and until it is replaced by a lawfully promulgated regulation").  They disagree, however, on which rule or practice now applies.

Before BLM published its most recent RMP, there was no clear rule regarding shooting within the Monument.  Earlier RMPs for the area simply did not address shooting. The practical result was to permit shooting.  The effect of the Court's vacatur, therefore, was to reinstate the previous practice of allowing shooting within the

1  Monument. *See CropLife Am.*, 329 F.3d at 884-85.

2  Plaintiffs argue that if an activity such as shooting is not expressly permitted by the current RMP, it can no longer occur within the Monument. Yet they provide no legal support for this argument. And the Court finds no logical reason to say that a common outdoor activity – whether it be hiking, picnicking, or shooting – is disallowed unless an RMP specifically permits it.

Plaintiffs also argue that the effect of the vacatur was to bring management of the Monument directly under the Proclamation and previous management guidance, which states that actions may continue only "if they are not precluded by the Proclamation and they do not conflict with the purposes of the Monument." A.R. 967. The Court agrees that the Proclamation guides BLM's management of the Monument, but the Proclamation does not specifically address shooting. The Court has found that BLM's decision to allow shooting throughout the Monument is inconsistent with BLM's own findings on the effects of shooting, but BLM retains considerable discretion in interpreting and applying the Proclamation with respect to recreational shooting. If Plaintiffs are to receive injunctive relief, they must qualify for it.

**IV.     Request for Injunction.**

**A.     Legal Standard.**

"An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010) (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-12 (1982)). If a partial or complete vacatur of an agency's decision is sufficient to redress Plaintiffs' injury, recourse to the additional and extraordinary relief of an injunction is not warranted. *Id.* at 165-66. A plaintiff seeking a permanent injunction must show:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.* at 156-57 (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

"While '[t]he decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court,' the 'traditional principles of equity' demand a fair weighing of the factors listed above, taking into account the unique circumstances of each case." *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 880 (9th Cir. 2014) (quoting *eBay*, 547 U.S. at 391, 394 (2006)). "Injunctive relief, however, must be tailored to remedy the specific harm alleged. An overbroad injunction is an abuse of discretion." *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991) (citations omitted).

### B. Court's Authority to Issue Injunction.

Defendants argue that because BLM could not amend the RMP to prohibit shooting without first complying with a statutorily-required process, the Court lacks authority to enjoin shooting within the Monument. The Court disagrees. While the statutes may limit BLM authority to amend the RMP, they do not preclude the Court from enjoining activities within the Monument. "'Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied.'" *Owner Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co. (AZ)*, 367 F.3d 1108, 1112 (9th Cir. 2004) (quoting *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946)). Courts routinely exercise their equity jurisdiction to enjoin activities on federally-managed land pending a new decision from an agency. *See, e.g.*, *Klamath Siskiyou Wildlands Ctr. v. Boody*, 468 F.3d 549, 562 (9th Cir. 2006) (finding violations of FLPMA and NEPA and enjoining BLM from engaging in certain timber sales); *High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630, 648-49 (9th Cir. 2004) (affirming injunctive relief pending a new NEPA analysis by the Forest Service).[1]

---

[1] Defendants also emphasize that "a district court may not approve a consent decree that 'conflicts with or violates' an applicable statute." *Conservation Nw. v. Sherman*, 715 F.3d 1181, 1185 (9th Cir. 2013). But a consent decree is a "hybrid" of a "settlement and an injunction" and for that reason may be subject to statutory requirements. *Id.* at 1185-86.

- 6 -

## C. Analysis.

### 1. Irreparable Harm and Adequacy of Legal Remedies.

The first two factors – whether Plaintiffs have suffered irreparable injury and whether remedies available at law are inadequate – favor injunctive relief. "Environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, *i.e.,* irreparable." *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 545 (1987); *see also League of Wilderness Defenders v. Connaughton*, 752 F.3d 755, 764 (9th Cir. 2014). While the Court may consider whether the "environmental damage harms a plaintiff's "ability to 'view, experience, and utilize' the areas in their undisturbed state," *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011), the "alleged harm to the plaintiff must be anchored in a specific and detailed allegation of harm to [the environment]," *Alliance for the Wild Rockies v. Kruger*, 35 F. Supp. 3d 1259, 1269 (D. Mont. 2014) (citing *Sierra Forest Legacy v. Sherman*, 951 F. Supp. 2d 1100, 1111 (E.D. Cal. 2013)).

The Final EIS prepared by BLM shows that recreational shooting within the Monument has caused substantial and ongoing harm to the environment. The Final EIS discusses a variety of problems that arise from recreational shooting, including "the risk of lead contamination in soils from bullets [and] the potential migration of that lead into surface and subsurface water systems," A.R. 20950; the loss of "naturalness and opportunities for solitude where spent shells, targets, and trash or gunfire degrades the landscape," A.R. 20979; and a "concern over the safety of specific shooting locations and practices and the use of automatic weapons," A.R. 21257. The EIS notes that shooting has resulted in "damage to protected plants, particularly saguaro; areas denuded of vegetation . . . accumulation of debris used as targets . . . [and risks to the] safety of other visitors." A.R. 22026. The EIS also warns that "[i]mpacts could include but are not limited to the direct loss, mortality or injury of individual animal species and avoidance of traditional habitats while target shooting is taking place," A.R. 21032, and that

"[s]ustained target shooting may cause direct mortality to desert tortoise and indirect impacts to tortoise habitat[.]" A.R. 22028.

This environmental damage is linked to the injuries experienced by members of Plaintiffs' organizations. Members of the Wilderness Society and Archeology Southwest have submitted affidavits. Docs. 48-1, 48-2. These affidavits establish that the members have regularly explored and enjoyed the Monument and will continue to do so. They show that shooting in the Monument has harmed the members' recreational and aesthetic interests. Mr. Hanceford, a member of the Wilderness Society, states that "witnessing shot-up and dying saguaro cacti and other flora, bullet holes in and around ancient petroglyphs, litter associated with target shooting . . . , sounds of continuous gunfire . . . detracts from the natural soundscape and solitude" he enjoys. Doc. 48-1, ¶ 11. Mr. Laurenzi, a member of Archaeology Southwest, states that "my experience when I hike, observe wildlife, . . . and observe archaeological and culturally significant sites, is palpably degraded and diminished when I witness the damage that has been caused . . . by recreational target shooting." Doc. 48-2, ¶ 18.

The environmental damage caused by recreational shooting is clearly irreparable. Legal remedies cannot provide adequate compensation for damage to the Monument. Finally, this damage has harmed the interests of Plaintiffs. The first two requirements for injunctive relief are satisfied.

### 2. Balance of Hardships and Public Interest.

The third factor – balancing the hardships – also favors injunctive relief. "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (quoting *Amoco Prod. Co.*, 480 U.S. at 542). But when environmental harm has occurred or is "sufficiently likely . . . the balance of harms will usually favor the issuance of an injunction to protect the environment." *Amoco Prod. Co.*, 480 U.S. at 545.

Defendants argue that an injunction would result in the hardship of having "to

expend resources on notifying the public of the Monument's closure to shooting, altering signage throughout the Monument, and policing the ban on target shooting." Doc. 52 at 22. While these are legitimate hardships, they are outweighed by ongoing environmental damage caused by recreational shooting. Furthermore, the Proclamation already requires BLM to manage the Monument so as to protect Monument objects. An injunction designed to protect these objects would not significantly harm BLM, even if BLM were required to expend resources to comply. Finally, and as discussed below, the Court intends to tailor its injunction, thereby limiting the hardship BLM may suffer. *See Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1022 (9th Cir. 2009) ("When deciding whether to issue a narrowly tailored injunction, district courts must assess the harms pertaining to injunctive relief in the context of that narrow injunction.").

The fourth factor – consideration of the public interest – favors injunctive relief. The public has a clear interest in preserving nature and avoiding irreparable environmental injury. *Alliance for the Wild Rockies*, 632 F.3d at 1138; *see also The Lands Council v. McNair*, 537 F.3d 981, 1005 (9th Cir. 2008) (finding "the public interest in preserving nature and avoiding irreparable environmental injury outweighs economic concerns"). Defendants argue that the public has an interest in allowing BLM to amend the RMP in accordance with the statutorily-required process. True, but an injunction would not prevent BLM from complying with this process. Rather, it would simply prevent shooting in certain locations pending a new analysis and decision. Defendants also argue that the public has an interest in using the Monument for recreational shooting. Also true, but a temporary interruption of shooting is outweighed by permanent injury to natural resources, particularly when, as here, alternative shooting locations are available.

### D.     Scope of Injunction.

Plaintiffs request an injunction prohibiting recreational shooting throughout the Monument. They argue that this is appropriate in light of BLM's earlier recommendation that the entire Monument be closed to shooting. *See* A.R. 22037. Alternatively, they

1 request an injunction on shooting throughout the Monument except for "two areas
2 (Hidden Valley (C) and Gap Tank (B)) or other areas deemed suitable for shooting in
3 BLM's target shooting analysis." Doc. 48 at 7.

4 Until it reviews the BLM submission described below, the Court cannot determine
5 whether Plaintiffs' first requested injunction is overbroad. "Injunctive relief . . . must be
6 tailored to remedy the specific harm alleged. An overbroad injunction is an abuse of
7 discretion." *Lamb-Weston, Inc.*., 941 F.2d at 974; *see also Monsanto*, 561 U.S. 139
8 (reversing an injunction for being overbroad).[2] The Court has previously found that the
9 Proclamation does not require BLM's management decisions to be those that are the *most*
10 protective of Monument objects. Doc. 43 at 9. And although BLM must undertake a
11 new NEPA analysis for recreational shooting within the Monument, this new analysis
12 will not necessarily require BLM to adopt a restrictive policy for shooting. *See*
13 *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989). That is a matter
14 to be determined in the administrative process properly conducted.

15 The Court is also unable to determine at this time whether Plaintiffs' second
16 proposal – limiting shooting to two areas – would be appropriate. In crafting appropriate
17 injunctive relief, the Court finds guidance in three Ninth Circuit cases. *See N. Cheyenne*
18 *Tribe v. Norton*, 503 F.3d 836 (9th Cir. 2007); *High Sierra Hikers Ass'n v. Blackwell*,
19 390 F.3d 630 (9th Cir. 2004); *Idaho Watersheds Project v. Hahn*, 307 F.3d 815 (9th Cir.
20 2002). In these cases, the district court had found an agency had violated NEPA when

---

[2] Defendants cite *Monsanto* for the proposition that the Court may not "use its equitable powers to short-circuit the agency decision making process after agency action is vacated." Doc. 52 at 16. In *Monsanto*, the district court found that an agency had violated NEPA by deregulating a type of alfalfa without completing an EIS. The district court vacated the agency's decision and enjoined the agency from deregulating the alfalfa, in whole or in part, pending completion of the EIS. In reversing the injunction, the Supreme Court emphasized that the agency could lawfully approve a *partial* deregulation of alfalfa before completing the new EIS. 561 U.S. at 159. Because the district court had enjoined the agency from approving not just a complete but also a partial deregulation, the injunction was overbroad. *Id.* at 164. *Monsanto* does not apply here. As Defendants concede, BLM cannot make a new decision regarding shooting without amending the RMP. *See* Doc. 52 at 15. A temporary injunction on shooting while BLM completes a new RMP does not prevent BLM from exercising its lawful authority, nor does it "short-circuit" the agency decision making process.

- 10 -

analyzing the effects of granting grazing permits (*Idaho Watersheds*), granting special-use permits for commercial packstock operators (*High Sierra*), or allowing phased development of coal bed methane deposits (*Northern Cheyenne*). The district court then crafted injunctive relief that expedited completion of the NEPA process and imposed interim measures that partially limited the environmentally harmful activities. The Ninth Circuit approved these injunctions.

Being unable to craft an injunction on the current record, the Court will require BLM to submit a declaration that includes pertinent recommendations. *See, e.g.*, *N. Cheyenne Tribe*, 503 F.3d at 844 (approving district court injunction that was based on BLM's recommendations); *Idaho Watersheds Project*, 307 F.3d at 831 (same).[3] This declaration should address two topics: (1) the earliest practicable date by which BLM can comply with the Court's previous order (Doc. 43); and (2) recommended interim measures that will limit the damage that recreational shooting is inflicting on Monument objects, including but not limited to damage to animals and their habitats (*e.g.*, the Sonoran Desert Tortoise habitat), protected plants and vegetation, sites of historic or archeological significance (*e.g.*, the Juan Bautista Trail), and areas used by the public.[4]

The measures proposed in the declaration are only to assist the Court in crafting

---

[3] In *Monsanto*, the Court left open the question of whether an evidentiary hearing is required before a court may issue this kind of injunctive relief. 561 U.S. at 166. The Court finds that although any interim measures adopted by the Court will not be based on a complete scientific analysis, an evidentiary hearing is unnecessary. As explained by the Ninth Circuit in a similar context: "determining what measures are needed through extensive fact intensive inquiry is precisely the purpose of the long term environmental review ordered by the district court . . . . It would be odd to require the district court to conduct an extensive inquiry, which would by nature involve scientific determinations, in order to support interim measures that are designed to temporarily protect the environment while the BLM conducts studies in order to make the very same scientific determinations." *Idaho Watersheds Project*, 307 F.3d at 831. This reasoning applies here. Holding a full evidentiary hearing on what restrictions on shooting might be consistent with the Proclamation would unnecessarily duplicate, and potentially interfere with, the work BLM is now undertaking in amending the RMP and EIS.

[4] BLM's field manager has submitted a declaration that discusses how BLM has developed education and outreach campaigns that instruct shooters how to engage in recreational shooting without damaging Monument objects. Doc. 52-1, ¶ 7. But the Court previously found such educational measures to be an inadequate way of fulfilling BLM's duty to protect Monument objects.

interim injunctive relief. BLM will not necessarily be required to adopt those measures in its final ROD and RMP. Measures adopted in the final documents will be up to BLM as informed by the ongoing analysis.

**IT IS ORDERED:**

1. Plaintiffs' motion for injunctive relief (Doc. 48) is **granted in part**.
2. An appropriate representative of the Bureau of Land Management shall submit **within 21 days** of this Order an affidavit addressing: (1) the earliest practicable date by which BLM can comply with the Court's previous order (Doc. 43); and (2) recommended interim measures that will limit the damage that recreational shooting is inflicting on Monument objects, including but not limited to damage to animals and their habitats, protected plants and vegetation, sites of historic or archeological significance, and areas used by the public.
3. Plaintiffs may submit a response **within 7 days** of the submission of BLM's affidavit.

Dated this 9th day of June, 2015.

_____
David G. Campbell
United States District Judge